CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

CYNTHIA FREY (DCBN 475889)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Cynthia.Frey@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS ARTIGA,<br><br>Defendant. | CASE NO. 26-CR-00358-TLT<br><br>**UNITED STATES' MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING AND SENTENCING MEMORANDUM**<br><br>Date: August 7, 2026<br>Time: 10:00 a.m.<br>Court: Hon. Trina L. Thompson |

## I. INTRODUCTION

The United States and the defendant, Carlos Artiga, jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history, leading the United States to seek expedited prosecution, obtain a

federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking.

**A. Offense Conduct and Procedural History**

On or about March 26, 2025, in the Northern District of California, and more specifically in the Tenderloin District of San Francisco in the vicinity of the sidewalk at 765 Geary Street, the defendant sold $20 worth of methamphetamine and cocaine base to an undercover officer, .3 grams of cocaine base (gross weight) and 1.2 grams methamphetamine (gross weight). He also possessed with intent to distribute fentanyl with a gross weight of 12 grams. He knew this substance was a controlled substance and that it was illegal for me to possess and illegal to possess it with the intent to distribute. Additionally, he possessed 19.3 grams (gross weight) methamphetamine, 1.5 grams (gross weight) cocaine base, 9.6 grams cocaine HCI (gross weight), and 10.8 grams (gross weight) of suspected heroin. I also possessed $728.40 of U.S. currency that were drug sale proceeds.

On April 15, 2025, the United States charged the defendant by Complaint with Distribution and Possession with Intent to Distribute Methamphetamine, in violation of 21 §§ U.S.C. 841(a)(1) and (b)(1)(c), (the "Federal Complaint"). The defendant was also charged by complaint in San Francisco County Superior Court on March 28, 2025 for Possession for Sale or Purchase of Controlled Substance in relation to the same arrest from March 26, 2025. The defendant failed to attend San Francisco County Superior Court proceedings related to that case until his next arrest on July 19, 2026. The defendant appeared in San Francisco Superior Court on July 21, 2026 and was released on his own recognizance and ordered to appear for the next status date on August 6, 2026. The defendant was then transferred to the custody of the U.S. Marshals Service on July 23, 2026, based on the arrest warrant issued in connection with the Federal Complaint. On July 27, 2026, the United States charged the defendant by Information with Possession with Intent to Distribute Fentanyl, in violation of 21 §§ U.S.C. 841(a)(1) and (b)(1)(c), (the "Information").

//

//

For the reasons set forth below, the United States and the defendant submit that a below-Guidelines sentence—accounting for the time served plus one day in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of Section 3553(a).

## II. MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable. This will achieve the expedited proceeding contemplated by both parties. The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record." Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b). The United States respectfully submits that the record here—the Federal Complaint, the Information, the Plea Agreement, and the parties' sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report. The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

## III. SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the parties jointly request a sentence of time served plus one day and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's convictions for drug trafficking arise.

### A. <u>Applicable Guidelines Range and Criminal History Category</u>

The United States calculates the following U.S. Sentencing Guidelines range:

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(9): Defendant possessed between 80 KG and 100 KG of Converted Drug Weight[1] | 22 |
| b. | Acceptance of Responsibility, U.S.S.G. §3E1.1: | - 3 |

[1] *See* Addendum – Converted Drug Weight Table.

c. Adjusted Offense Level: 19

The United States calculates a Criminal History Category of II (3 points).[2] The criminal history records revealed a conviction in May 2015 for Illegal Entry in violation of 8 U.S.C. § 1325, and a conviction in 2019 for possession of a controlled substance for sale, in violation of California Health and Safety Code § 11351.5.

An Adjusted Offense Level of 19 and a Criminal History Category of II results in a Guidelines range of 33 to 41 months, with a three-year term of supervised release (as required by statute) and imposition of the $100 mandatory special assessment.

**B. <u>Section 3553 Factors</u>**

**1. *Nature And Circumstances of The Offense and History and Characteristics of The Defendant***

The defendant is a 40-year-old male who was born in Honduras. The offense conduct, as described above, involves the defendant's distribution and possession with intent to distribute numerous controlled substances, including fentanyl and methamphetamine, in the Tenderloin in March 2025. According to the Department of Homeland Security, the defendant lacks immigration status and/or is removable under U.S. immigration law. The defendant has been previously arrested and convicted four times for Illegal Entry, in violation of 8 U.S.C. § 1325, in the District of Arizona between 2010 and 2015. There is an immigration detainer in place, such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals. As set forth above, the defendant also has two prior convictions in the ten years prior to the instant offense, placing him in Criminal History Category II.

Although drug trafficking fentanyl is a serious offense and drug trafficking in the Tenderloin, adds to the severity of the offense, given the defendant's minimal criminal history, a below guidelines sentence is appropriate here. While other circumstances may warrant a term of imprisonment consistent with the guidelines, in this case a guidelines sentence is greater than necessary, and a time-served plus one day sentence is appropriate.

---

[2] The government has reviewed and produced in discovery the criminal history report for the defendant available through the National Crime Information Center, a criminal records database.

### 2. *Need For the Sentence to Reflect the Seriousness of the Offense, To Promote Respect for the Law, and to Provide Just Punishment; To Afford Adequate Deterrence to Criminal Conduct; and To Protect the Public from Further Crimes of the Defendant*

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

However, the defendant has limited criminal history and the proposed sentence of time served plus one day plus a three-year term of supervised release with a highly restrictive geographic restriction is appropriate. For the defendant to receive this below Guidelines plea offer, the defendant waived detention and has been in continuous custody since arrest. Additionally, the government offered the defendant a time-served sentence in exchange for the defendant's agreement to promptly plead guilty and proceed to sentencing (including waiving indictment) within weeks of arrest. The defendant also agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges or supervised release violations. This disposition results in drug trafficking convictions within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin. The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

Given the reasons set forth above, the Court should accept the joint-proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) and sentence the defendant to time served plus one day.

//

**C. <u>The Necessity of the Proposed Supervised Release Special Conditions</u>**

A three-year term of supervised release is required by statute for the drug-trafficking offenses to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to impose a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Laguna Street, on the north by Sutter Street, on the east by Powell Street and 5th Streets, and on the south by Folsom Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the circumstances of Tenderloin drug trafficking, in which the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country, but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the United States respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

//

//

//

//

## IV. CONCLUSION

For these reasons set forth above, the United States recommends that the Court sentence the defendant to a sentence of time served plus one day, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition.

DATED: August 3, 2026

Respectfully Submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Cynthia Frey*
CYNTHIA FREY
Assistant United States Attorney

## ADDENDUM – CONVERTED DRUG WEIGHT TABLE[3]

| Substance | Amount Possessed by Defendant | Conversion | Converted Drug Weight |
|---|---|---|---|
| Fentanyl | 12 grams | 1 gram = 2.5 kilograms | 30 kilograms |
| Cocaine base | 1.8 grams | 1 gram = 3,571 grams | 6,427 gram = 6.42 kilograms |
| Methamphetamine | 20.5 grams | 1 gram = 2 kilograms | 41 kilograms |
| Cocaine | 9.6 grams | 1 gram = 200 gram | 1,920 grams = 1.92 kilograms |
| Heroin | 10.8 grams | 1 gram = 1 Kilogram | 10.8 kilograms |
| **Total** | **-** | **-** | **90.14 kilograms** |

[3] *See* §2D1.1.